IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| KENYATTA BROWN, #K79185, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 23-cv-04057-SMY |
| | ) | |
| MARCELUS OTTENSMEIER, | ) | |
| DEVIN McKINNEY, | ) | |
| JESSICA HUFFMAN, | ) | |
| JUSTIN FRAZER, | ) | |
| NATHAN McCARTHY, | ) | |
| SARAH WOOLEY, | ) | |
| JOSHUA SCHOENBECK, | ) | |
| REICHERT, and | ) | |
| DOE 1-3, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

**YANDLE, District Judge:**

Plaintiff Kenyatta Brown filed a First Amended Complaint pursuant to 42 U.S.C. § 1983. (Doc. 14). He claims that officials at Menard Correctional Center conspired to retaliate against him for naming them in a lawsuit, and seeks money damages and expungement of two false disciplinary tickets. The First Amended Complaint is subject to review under 28 U.S.C. § 1915A, which requires the Court to dismiss any portion of a prisoner complaint that is legally frivolous or malicious, fails to state a claim, or seeks money damages from an immune defendant. 28 U.S.C. § 1915A(a)-(b).

**First Amended Complaint**

Plaintiff makes the following allegations in the amended complaint (Doc. 14, pp. 12-30): Soon after transferring to Menard in January 2020, Plaintiff learned of an ongoing dispute between Menard administrative officials and IDOC investigators about whether inmates should be allowed

1

to wear dreadlocks in the general population. When he refused to cut his dreadlocks, Plaintiff experienced mail delays, visitor bans, and non-contact visit restrictions. Plaintiff filed a lawsuit in May 2021 against Menard's internal affairs (I/A) officers, including Shaun Gee, Nathan McCarthy, Bryan Childs, and Justin Frazer.[1] *Id*. at 14.

A week after these individuals were served with the lawsuit, Defendants began retaliating against Plaintiff. Marcelus Ottensmeier and Devin McKinney had Plaintiff escorted from his cell for a "well-being check," during which they questioned him about contact visits and drugs in segregation. *Id*. Plaintiff felt intimidated by the interview and later asked a long-term inmate what he should do to avoid staff retaliation. The inmate recommended dismissing the lawsuit. Plaintiff followed the advice.

Plaintiff wrote a letter offering to settle the case for the cost of the filing fee on June 3, 2021. He sent the letter to the prison library for photocopying prior to mailing, but did not receive it back until September 17, 2021. He blames the delay on the internal affairs office that oversees mail. *Id*.

Plaintiff wrote a second offer of settlement and mailed it on July 8, 2021. The same day, Inmate Corey Sanders circulated a different letter from Plaintiff with inmates on the gallery. A fight broke out around the same time. I/A Officer Justin Frazer confiscated Plaintiff's letter and moved him into restrictive housing while his cell was searched for evidence of a link between his letter and the fight. *Id*. at 15.

Nathan McCarthy interviewed Plaintiff on July 12, 2021, while he was in restrictive housing. McCarthy shared his theory that Plaintiff was a black disciple gang leader and used the letter to order a "hit" on a rival gang member for nonpayment of a debt. *Id*. Plaintiff explained

---

[1] Plaintiff offers this as background information only; he asserts no claims against these individuals in this lawsuit.

that he retired from gang membership.  He also pointed out that the letter was sealed and unopened when it was circulated on the gallery where the fight occurred.  He explained, its contents revealed that he was simply brokering a deal for the purchase of pornographic magazines.  McCarthy did not believe Plaintiff and badgered him about his gang membership status.  Plaintiff told McCarthy that he knew Defendants were pushing this theory because of the lawsuit he filed against them. McCarthy responded, "[F]or every action, there's a reaction."  *Id*.

Although McCarthy agreed to release Plaintiff from restrictive housing if the investigation showed no connection between the fight and his letter, Plaintiff remained in segregation after the investigation showed no connection.  *Id*. at 16.  Plaintiff soon realized that McCarthy was looking for evidence of a more serious rule violation.

I/A Officer Doe 1 and Jessica Huffman removed Plaintiff from his cell on August 5, 2021 while they searched it for 2.5 hours.  *Id*. at 17.  When Plaintiff returned, he found his cell in "shambles," with missing photos, phone numbers, and notes about his conversations with the defendants.  He noticed that one court document now had the names of I/A Officers Childs and Gee circled.  He also discovered spit in his food after he began eating it.  He was denied medical treatment when he later became ill.  *Id*. at 19.

On August 10, 2021, Frazer issued Plaintiff a false disciplinary ticket for drugs and drug paraphernalia.  *Id*. at 17.  The report indicated that Plaintiff's loved ones mailed Plaintiff 177 photos that tested positive for synthetic cannabinoids.  *Id*. at 17-18.  The ticket was issued after Frazer found Plaintiff's letter on July 8, 2021 and Hoffman and Doe 1 confiscated his photos on August 5, 2021.  The report was "riddled with inaccuracies" and issued well beyond the 30-day deadline for tickets stemming from an investigation.  *Id*. at 18.  When Plaintiff complained directly

to Assistant Warden Reichert on August 16, 2021, the warden said, "[I]t should be dismissed at your hearing." *Id*.

Following a hearing on August 18, 2021, Joshua Schoenbeck, "Jones," and "Walker" found Plaintiff guilty and punished him with 90 days of restrictive housing and 6 months of contact visit restrictions. *Id*. at 19. The report acknowledged that the original ticket contained inaccuracies that required revisions to the ticket, but Plaintiff never received the corrected version. When Plaintiff later asked McCarthy and Sarah Wooley if they knew about the ticket, McCarthy bragged that he helped write it while Wooley laughed. *Id*. at 18. Plaintiff demanded to know why he was framed, and the two officers badgered him about being a prison drug dealer. *Id*.

During his 90 days in restrictive housing, Plaintiff was placed in a cell equipped with a steel door in peak summer heat. He could only speak through the food slot when it was opened for him. He became anxious, depressed, and even suicidal, but was denied mental health treatment. His mail was delayed or missing altogether. When he asked Officer Roland for a reduction in his time in segregation, the officer said, "[T]hey won't let me do it for you." *Id*. at 19.

Plaintiff filed a grievance to challenge the disciplinary ticket, but it was denied on the basis of the positive drug test results. *Id*. Plaintiff submitted a FOIA request for the drug test results. When he received them, Plaintiff learned that the results were negative for synthetic cannabinoids. *Id*. at 19-20. He forwarded the results to internal affairs on September 28, 2021. *Id*. at 20. But, even when presented with contrary lab results, internal affairs insisted the results were positive and continued to do so long after Plaintiff completed his 90 days in segregation on October 7, 2021. Plaintiff's disciplinary ticket ("first ticket") was never expunged. *Id*.

On the date Plaintiff was released from restrictive housing, I/A Officer Doe 2 allowed Inmate Corey Sanders to enter the unit and linger near Plaintiff during his transition out of

segregation. This was not normally allowed. Plaintiff believes Doe 2 tried to instigate a fight to justify Plaintiff's continued confinement in segregation. Plaintiff left the area without incident. *Id*. at 24.

In December 2021, Officer Wooley and McKinney issued Plaintiff a false disciplinary ticket for conspiring to commit a staff assault against Officer Price. *Id*. at 24-29. Officer Price told Plaintiff that Wooley and McKinney offered Bowman a transfer, if he implicated Plaintiff in a "fake hit" on Price. *Id*. at 26. Plaintiff was not allowed to present any evidence of this "setup" at his disciplinary hearing before Schoenbeck, Jones, and Walker found him guilty of conspiracy to commit a staff assault. *Id*.

As punishment, Plaintiff received another 90 days in restrictive housing, demotion to C grade, and 6 months of contact visit restrictions. While in segregation, Plaintiff was placed behind a steel door and denied sheets, a pillow, and toilet paper at times. The door and toilet were inoperable and feces covered the walls. The mail was delayed, and I/A Officer Doe 3 confiscated a copy of an appellate brief that Plaintiff's criminal attorney sent him and then accused Plaintiff of using his legal mail to pass drugs. Plaintiff was unable to visit his dying aunt. He again contemplated suicide. This second disciplinary ticket ("second ticket") was never expunged. *Id*.

### **Preliminary Dismissals**

Plaintiff mentions the following individuals in the statement of his claim without naming them as defendants: Officer Roland, Officer Price, Shaun Gee, Nathan McCarthy, Bryan Childs, Jones, and Walker, among others. The Court will not treat these individuals as parties, and all claims against them are dismissed without prejudice. *See* FED. R. CIV. P. 10(a).

**Discussion**

The Court deems it appropriate to re-organize the claims in the *pro se* First Amended Complaint (Doc. 14) into the following counts:

**Count 1:** First Amendment claim against Ottensmeier and McKinney for insinuating that Plaintiff was involved in drug dealing in retaliation for filing a suit against Menard officials in May 2021.

**Count 2:** First and/or Fourteenth Amendment claim against the "prison law library" and/or "internal affairs" for delaying the photocopying, mailing, and return of Plaintiff's offer of settlement from June 3, 2021 until September 17, 2021.

**Count 3:** First Amendment claim against Frazer, McCarthy, Huffman, Doe 1, and Wooley for placing Plaintiff in restrictive housing, searching his cell, and confiscating his property, all in retaliation for Plaintiff's letter to another inmate confiscated on or around July 8, 2021.

**Count 4:** Fourteenth Amendment claim against Frazer, McCarthy, Huffman, Doe 1, Wooley, Reichert, and Schoenbeck for depriving Plaintiff of a protected liberty interest without due process of law by punishing him on false disciplinary charges for drugs in August 2021 (first ticket) with 90 days in segregation and 6 months of contact visit restrictions following an unfair disciplinary hearing.

**Count 5:** Eighth Amendment claim against Defendants for subjecting Plaintiff to unconstitutional conditions of confinement in restrictive housing for 90 days from July 8, 2021 until October 7, 2021.

**Count 6:** Fourteenth Amendment claim against Wooley, McKinney, and Schoenbeck for depriving Plaintiff of a protected liberty interest without due process of law by punishing him on false disciplinary charges for conspiracy to commit staff assault in December 2021 with 90 days of segregation, 6 months of contact visit restrictions, and C grade following an unfair disciplinary hearing.

**Count 7:** Eighth Amendment claim against Defendants for subjecting Plaintiff to unconstitutional conditions of confinement in restrictive housing for 90 days from approximately January until March 2022.

**Count 8:** First Amendment claim against I/A Officer Doe 3 for attempting to instigate a fight between Plaintiff an Inmate Corey Sanders on or around October 7, 2021, in order to retaliate against Plaintiff.

> **Count 9:** Conspiracy claim against Defendants for their concerted efforts to retaliate against Plaintiff for filing suit against Menard officials in May 2021.

**Any other claim that is mentioned in the First Amended Complaint but not addressed herein is considered dismissed without prejudice as inadequately pled under *Twombly*.[2]**

### Retaliation Claims: Counts 1, 3, 8, and 9

To state a viable retaliation claim, a plaintiff must sufficiently allege that: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter future First Amendment activity; and (3) his First Amendment activity was "at least a motivating factor" in each defendant's decision to take retaliatory action against him. *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (citing *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)). In Count 1, Plaintiff alleges that Ottensmeier and McKinney retaliated against him for filing a lawsuit by conducting a "wellness check" on Plaintiff and questioning him about his outside contacts and access to drugs in segregation. Plaintiff alleges he felt intimidated by this interview and subsequently offered to dismiss his prior suit against Menard officials to avoid anticipated retaliation. However, the "wellness check" described by Plaintiff does not amount to retaliatory conduct simply because Plaintiff felt like the two defendants insinuated that he was involved in misconduct. Additionally, anticipated retaliation is speculative and provides no basis for a retaliation claim. As such, Plaintiff fails to state a colorable retaliation claim against Ottensmeier and McKinney; Count 1 will be dismissed without prejudice.

In Count 3, Plaintiff claims Frazer, McCarthy, Huffman, Doe 1, and Wooley placed him in restrictive housing, interrogated him, searched his cell, confiscated his property, and spat in his food, after intercepting Plaintiff's letter to another inmate in July 2021. Under § 1983, "not every

---

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

retaliatory act committed by a public official is actionable." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 687 (4th Cir. 2000).  The misconduct must be motivated by an activity that is protected by the First Amendment.  The speech that prompted the defendants' retaliation was Plaintiff's letter to another inmate which Defendants stated ordered a "hit" on a rival gang member and caused a fight, and Plaintiff claims brokered a deal for the purchase of prohibited pornographic magazines.  Either way, Plaintiff's letter did not constitute protected speech and cannot support a retaliation claim in Count 3 against Frazer, McCarthy, Huffman, Doe 1, and Wooley.  *See Garner v. Brown*, 752 F. App'x 354, 357 (7th Cir. 2018) (letter written by state inmates to prison administration about prison conditions was not compatible with legitimate penological interest of prison security, and was thus not protected under the First Amendment).

In Count 8, Plaintiff speculates that I/A Officer Doe 3 attempted to instigate a fight between him and Inmate Sanders when the officer allowed them to spend time near one another on October 7, 2021.  Plaintiff left the area without incident and does not allege that any retaliatory conduct occurred.  Moreover, Plaintiff's allegations do not identify protected speech.  Therefore, Count 8 will be dismissed without prejudice.

Without an underlying retaliation claim, Plaintiff cannot proceed on his claim in Count 9 that Defendants conspired with one another to retaliate against him.  A claim of civil conspiracy is actionable, but it does not provide an independent basis for liability under § 1983.  *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008).  To pursue a claim for conspiracy to retaliate, a plaintiff must demonstrate: (1) the defendants had an express or implied agreement to deprive the plaintiff of his constitutional rights; and (2) Plaintiff was deprived of his constitutional rights by the defendants' overt actions in furtherance of the agreement.  *Williams v. Seniff*, 342 F.3d 774, 782 (7th Cir. 2003).  In his First Amended Complaint, Plaintiff claims that the defendants conspired to

retaliate against him for filing a lawsuit against Menard officials and for sending a letter to another inmate (Count 3). Because none of his retaliation claims survive screening, his claim for conspiracy-to-retaliate in Count 9 will be dismissed without prejudice.

### Mail Interference Claim: Count 2

Plaintiff claims that the "prison law library" and "internal affairs" delayed mail on at least one occasion. However, a limited, short-term, or sporadic interference with mail delivery does not violate the Constitution. *Sizemore v. Williford*, 829 F.2d 608, 610 (7th Cir. 1987). Moreover, Plaintiff names no individual defendants in connection with this claim. *See Twombly*, 550 U.S. at 555; FED. R. CIV. P. 8(a)(2). Without identifying the individuals who are responsible for a violation of his rights and describing what each individual did, or did not do, to violate his rights, Plaintiff states no actionable claim. Count 2 will be dismissed without prejudice.

### Due Process Claims: Counts 4 and 6

When presented with a claim for the denial of due process in the context of prison disciplinary proceedings, the Court considers whether: (1) a protected liberty interest was at stake that necessitated due process protections in the first place; and (2) whether the disciplinary hearing was conducted in accordance with procedural due process requirements. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). Plaintiff's allegations suggest that a protected interest was at stake. He was punished with a total of 180 days in segregation for his two disciplinary tickets.[3] He describes harsh conditions in restrictive housing, including the denial of bedding, working toilets, a functioning door, heat exposure, and denial of mental health treatment, among other things. As such, the Court will allow both claims to proceed against the defendants who issued the allegedly false tickets (Frazer, McCarthy, Wooley, and McKinney) and the defendant who presided over the

---

[3] Demotion to C grade and contact visit restrictions do not rise to the level of protected interests in liberty or property.

9

allegedly unfair adjustment committee hearing (Schoenbeck). The claims will be dismissed against all other defendants.

### Conditions Claims: Counts 5 and 7

An Eighth Amendment claim for unconstitutional conditions of confinement requires a prisoner-plaintiff to describe conditions that denied them the "minimal civilized measure of life's necessities," such as shelter, food, clothing, and medical care, and to describe conduct on the part of each defendant that amounted to deliberate indifference to a substantial risk of harm to the inmate's health and safety. *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006); *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Plaintiff describes conditions in restrictive housing that could be considered objectively serious, such as excessive heat, filthy living conditions, and broken plumbing. However, he fails to identify a particular defendant in connection with these claims.[4] Therefore, Counts 5 and 7 will be dismissed without prejudice.

### Disposition

The First Amended Complaint (Doc. 14) survives screening pursuant to 28 U.S.C. § 1915A, as follows:

- **COUNT 4** will proceed against **FRAZER, McCARTHY,** and **SCHOENBECK**;
- **COUNT 6** will proceed against **WOOLEY, McKINNEY,** and **SCHOENBECK.**

However, **COUNTS 1, 2, 3, 5, 7, 8,** and **9** are **DISMISSED without prejudice** for failure to state a claim. **ALL DEFENDANTS**, *except* Defendants Frazer, McCarthy, Wooley, McKinney, and Schoenbeck, are **DISMISSED without prejudice**.

The Clerk shall prepare for Defendants **FRAZER**, **McCARTHY, WOOLEY, McKINNEY,** and **SCHOENBECK**: (1) Form 5 (Notice of a Lawsuit and Request to Waive

---

[4] Officer Roland is the only person he mentions in connection with Counts 5 and 7, but the officer is not a defendant.

Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the First Amended Complaint (Doc. 14), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If any Defendant cannot be found at the work address provided by Plaintiff, their employer shall furnish the Clerk with that Defendant's current work address, or, if not known, that Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the First Amended Complaint (Doc. 14) and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244 and Local Rule 8.2, Defendants need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. § 1915, he will be required to pay the full amount of the costs, even though he was granted *in forma pauperis* status. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a

delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:    August 1, 2024**               *s/ Staci M. Yandle*
                                           **STACI M. YANDLE**
                                           **United States District Judge**

### Notice to Plaintiff

Once identified, the Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your First Amended Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your First Amended Complaint. It will likely take at least **60 days** *from the date Defendants are served with this lawsuit* to receive the Defendants' Answers, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel files an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.