IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **KENYATTA BROWN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 3:23-CV-4057-MAB |
| | ) |
| **MARCELLUS OTTENSMEIER,** | ) |
| **DEVIN MCKINNEY,** | ) |
| **JESSICA ARMBRUSTER,** | ) |
| **JUSTIN FRAZER,** | ) |
| **NATHAN MCCARTHY,** | ) |
| **SARAH WOOLEY,** | ) |
| **JOSHUA SCHOENBECK,** | ) |
| **JOHN DOES 1–3, and** | ) |
| **ANTHONY WILLS,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is currently before the Court for case management purposes. Plaintiff Kenyatta Brown was permitted to proceed on various First Amendment and Fourteenth Amendment claims, as well as a conspiracy claim against a number of named prison officials and three unknown prison officials, who were referred to as John Does 1, 2, and 3 (Doc. 29). The current warden of Menard Correctional Center, Anthony Wills, was added in his official capacity to help identify the unknown defendants (Doc. 29, p. 11). As instructed, Plaintiff filed a Notice with descriptive information about Does 1, 2, and 3 (Doc. 34; *see also* Doc. 29, p. 12). The Warden followed with a Notice indicating that he was unable to identify the Does based on the information provided by Plaintiff, but he

provided additional information and documents that may be useful in identifying them (Doc. 42; *see also* Doc. 38). Plaintiff then followed with a Notice asking for additional steps to be taken to identify the Does (Doc. 43; *see also* Doc. 38). Outlined below is the information exchanged by the parties to date, as well as the additional information Plaintiff has requested, and additional discovery the Court has deemed necessary.

**Re: Doe 1:**

Plaintiff explained that Doe 1 is an Internal Affairs/Intelligence Officer, who allegedly searched his cell, along with Officer Jessica Huffman, on August 5, 2021 (Doc. 34, p. 1; *see also* Doc. 29, p. 6). Plaintiff was not able to see the unknown officer and therefore cannot provide a description of the officer (Doc. 34, p. 1).

Warden Wills was unable to identify Doe 1 based on the information provided by Plaintiff (Doc. 42, p. 2). The Warden did, however, provide Plaintiff with lightly redacted copies of shift rosters, an incident report, and an investigation report (*Id.* at pp. 2, 3). According to Warden Wills, the shift rosters reflect that Jessica Huffman worked the 7 a.m. to 3 p.m. shift on August 5, 2021 (*Id.* at p. 2). There were eight other employees assigned to internal affairs or intelligence that day whose shifts overlapped with Huffman's. The Warden contends that any of those eight employees could be the individual who accompanied Huffman to search Plaintiff's cell (*Id.* at pp. 2–3).

Warden Wills also noted that while there is no shakedown slip for the day in question for Plaintiff's cell, there *is* an incident report and an investigation report (Doc. 42, p. 3). But, according to the Warden, neither report mentions a search of Plaintiff's cell (*Id.*). While both reports list Defendant Huffman's name alongside Sgt. Sarah Wooley

(also a Defendant) as either involved in or witnesses to the August 5, 2021, incident and investigation, Wooley told defense counsel that she has no recollection of searching Plaintiff's cell (*Id.*). Defense counsel also spoke to "an additional employee" (whom he did not identify), who worked on August 5, 2021, and was assigned to either internal affairs or intelligence, and who also said they had no recollection of the search Plaintiff describes (*Id.*). Defense counsel noted that it was possible Defendant Huffman would have some recollection of Plaintiff's allegations, but Huffman was no longer employed by the IDOC and had not yet appeared in this action (*Id.*).

In response, Plaintiff indicated that he was housed in Restrictive Housing on the two gallery of the North 2 cellhouse when the shakedown/search occurred (Doc. 43, p. 2). He said there are three gallery cameras and footage would show two gallery officers appearing at his cell sometime after lunch trays were passed out, handcuffing him, and escorting him to the shower where they held him (*Id.*). The footage would then show that Defendant Huffman came down the gallery with another officer, whom Plaintiff could not fully see from the shower (*Id.*). Plaintiff stated there might also be other cameras that could have captured Huffman and Doe 1 exiting the two gallery or the North 2 building with his property wrapped in a sheet that they used as a makeshift bag (*Id.*).

The Court also notes that Defendant Jessica Huffman was served with process, and defense counsel entered his appearance on Huffman's behalf on February 21, 2025 (Doc. 44). To date, the Court has received no indication of any efforts by defense counsel to obtain information from Defendant Huffman.

To further facilitate identifying John Doe 1, Warden Wills is **DIRECTED** to:

- Provide an affidavit (or unsworn declaration pursuant to 28 U.S.C. § 1746) from Defendant Huffman attesting to her activities and movements on August 5, 2021, as it relates to the incident involving Plaintiff and the attendant investigation, including the search of Plaintiff's cell. Huffman should state whether he recalls the name of the other officer(s) who purportedly assisted her in searching Plaintiff's cell or were otherwise present during the search.

- Provide an affidavit (or unsworn declaration) from Defendant Sarah Wooley attesting to her activities and movements related to the incident involving Plaintiff on August 5, 2021, and the attendant investigation. Wooley should be sure to explain why she was listed in the incident and investigation reports as "involved in or witnesses to the August 5, 2021, incident and attendant investigation[.]" Wooley should also indicate whether she searched Plaintiff's cell and/or is aware of who did.

- Inquire as to whether there is any pertinent camera footage available from August 5, 2021. If footage is available, the Warden shall make arrangements for Plaintiff to view it. If footage is *not* available, the Warden shall provide an affidavit (or unsworn declaration pursuant to 28 U.S.C. § 1746) from a prison official with personal knowledge explaining (in a comprehensive fashion) why there is no footage available from the gallery or the cellhouse.

In the event that neither Huffman nor Wooley are able to identify John Doe 1, and there is no camera footage available, the Court believes there may be additional steps that could be taken to figure out who was present for and/or assisted in the search of Plaintiff's cell on August 5, 2021, or to at least narrow the list of officers who could potentially be John Doe 1. For example, there may be documentation indicating what time lunch trays were served on the two gallery on the day in question. Perhaps there is something documenting the time when Plaintiff was removed from his cell, where he was held, and for how long. Perhaps there is a log of individuals who entered and exited

the gallery on the day in question. Or perhaps there was an email, memo, or some other type of written instruction commanding that Plaintiff's cell be searched. Simply put, Warden Wills must take additional steps to uncover and review all documents that might shed light on the events of August 5, 2021. If such additional efforts by Warden Wills are necessary, he shall provide an affidavit (or unsworn declaration pursuant to 28 U.S.C. § 1746) outlining the efforts he made.

**Re: Doe 2:**

Doe 2 is an Internal Affairs/Intelligence Officer, who, on October 7, 2021, is alleged to have authorized the unscheduled release of inmate Cordell Sanders from restrictive housing into the holding area where Plaintiff was located (Doc. 34, p. 2; *see also* Doc. 29, p. 7).

The Warden was unable to identify Doe 2 based on the information provided by Plaintiff (Doc. 42, p. 2). The Warden did, however, explain that shift rosters show there were ten employees assigned to internal affairs or intelligence who worked on October 7, 2021 (*Id.* at p. 3). It is unclear whether the Warden provided these shift rosters to Plaintiff (*see id.*). The Warden also stated that "[n]o individual employee is solely responsible for determining when an individual custody is released from restrictive housing." (*Id.*). Any of those ten employees could be Doe 2, but it was impossible for the Warden to say without additional information (*Id.* at pp. 3–4). Defense counsel indicates that he spoke to two of the ten employees in question (whom he did not identify), but neither of them had any recollection of the events Plaintiff describes (*Id.* at p. 4).

In response, Plaintiff reiterates that Cordell Sanders was being held in restrictive

housing on investigative status, so the only way for him to be released was if an Internal Affairs/Intelligence officer closed the investigation and authorized Sanders' release (Doc. 43, p. 3). Plaintiff asks for a copy of the investigative reports pertaining to the incident surrounding Sanders' placement in restrictive housing on investigative status (*Id.*).

To further aid Plaintiff in identifying John Doe 1, Warden Wills is **DIRECTED** to:

- Provide Plaintiff with the aforementioned shift rosters, if he did not already do so;

- Provide Plaintiff with the investigative reports (redacted as necessary) pertaining to Cordell Sanders' placement in restrictive housing on investigative status, and his release on October 7, 2021;[1]

In the event that the investigative report does not reveal the name of John Doe 2, the Court is again convinced that there is more that can be done to identify this Defendant. Warden Wills must provide an affidavit from a prison official with personal knowledge explaining (in a comprehensive fashion) the process for removing an inmate from investigative status and releasing them from restrictive housing, both planned, scheduled releases and unscheduled, impromptu releases. Warden Wills must also take steps to uncover, review, and—if appropriate—provide to Plaintiff all documents related to Cordell Sanders' release from restrictive housing on October 7, 2011. For example, perhaps there are records documenting the time at which Sanders (or Plaintiff) was released from restrictive housing. That information could be used to establish the shift

---

[1] To be clear, the Court is not asking the Warden to provide Plaintiff with documents related to any and every time Cordell Sanders was placed on investigative status or in restrictive housing. The Warden need only provide the documents, redacted as necessary, that pertain to the stint from which he was released on October 7, 2021.

that Doe 2 was working and could potentially narrow the list of candidates.

**Re: Doe 3:**

Doe 3 is an officer, likely an Internal Affairs/Intelligence Officer, who sometime between December of 2021 and March of 2022, intercepted mail sent from Plaintiff's attorneys and then called the law firm to inquire about the mail (Doc. 34, p. 2; *see also* Doc. 29, p. 8)

The Warden was unable to identify Doe 2 based on the information provided by Plaintiff (Doc. 42, p. 2). Given that the timeframe at issue spans approximately three months, the Warden did not review or provide shift rosters for each day within that timeframe (*Id.* at p. 4). Defense counsel indicates that none of the incident or investigation reports provided by the facility reference an interception of Plaintiff's mail between December 2021 and March 2022 (*Id.*). Defense counsel once again spoke to two employees assigned to either internal affairs or intelligence during the relevant period (whom he did not identify), and neither of them had any recollection of the events Plaintiff describes (*Id.* at p. 4).

In response, Plaintiff requests any and all investigative reports filed by Internal Affairs/Intelligence Officers on Plaintiff during the relevant rime period, especially those pertaining to his mail (Doc. 43, p. 5).

The Court also notes that emails attached to Plaintiff's amended complaint provide further details about the package at issue (*see* Doc. 14, pp. 111–13). According to an email from Plaintiff's attorney, Kate Cohn, a package with a "voluminous mailing" was delivered to Menard on January 18, 2022 (*Id.* at p. 113). The package was signed for

by "R. King" and had a Fed Ex tracking numbers of 288 746074989 (*Id.*). It had a return address of Aloha Printing, rather than the law firm, and someone from the prison called Aloha Printing and told them that the package would be opened, inspected, and then processed through to Plaintiff (*Id.* at pp. 111, 113). But Plaintiff never received it (*Id.* at p. 113).

To further aid Plaintiff in identifying the unknown Defendants, Warden Wills is **DIRECTED** to:

- Provide Plaintiff with any and all incident and investigative reports involving Plaintiff and pertaining to events that occurred between December 2021 through March of 2022.

- Identify "R. King" who signed for Plaintiff's package on January 18, 2022, and provide an affidavit (or unsworn declaration pursuant to 28 U.S.C. § 1746) from R. King attesting to his/her activities that day with respect to the package.

- Provide an affidavit (or unsworn declaration pursuant to 28 U.S.C. § 1746) from a prison official with the requisite personal knowledge as to how packages for inmates from FedEx, UPS, or the Postal Service—both those marked as "legal mail" and those that are not—are processed and who is responsible for processing them. If possible, the official should also explain why a call would have been made to Aloha Printing and who would have conceivably placed that call.

All affidavits/declarations and other documents produced pursuant to this Order shall be provided directly to Plaintiff *and* filed on the docket. Defendants' deadline for doing so is July 3, 2025.

Defense counsel is authorized to redact as necessary any prison records produced pursuant to this Order. Plaintiff may challenge the redactions, if he finds it necessary, by filing a motion with the Court. Additionally, in the event that Warden Wills believes that

merely redacting the prison documents produced pursuant to this Order is insufficient to protect privacy and or security interests, he may move for a protective order. The Court will consider whether a hearing on any such motion is necessary.

If these additional efforts do not yield any information from which Plaintiff can identify the John Does, the Court will consider whether it is necessary to order additional affidavits, to schedule an evidentiary hearing, and/or to recruit counsel for Plaintiff.

**IT IS SO ORDERED.**

**DATED: May 19, 2025**

<u>s/ Mark A. Beatty</u>
**MARK A. BEATTY**
**United States Magistrate Judge**
